UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

EDGE COMMUNICATIONS              §
SOLUTIONS LLC                    §
                                 §
v.                               §    CIVIL NO. 4:25-CV-397-SDJ
                                 §
HEIDE WERTHAMER, ET AL.          §

## MEMORANDUM OPINION AND ORDER

Edge Communications Solutions LLC ("Edge") sued its former employees, Heide Werthamer and Marina Willis, in Texas state court. Werthamer timely removed the case to this Court based on an allegation of diversity jurisdiction under 28 U.S.C. § 1332(a). (Dkt. #1). Edge moves for remand to state court, maintaining that Werthamer has failed to meet her burden to show that diversity exists. The Court agrees with Edge and the case will be remanded.

### I. BACKGROUND

Werthamer and Willis are citizens of Florida. (Dkt. #1-1 ¶ 2). Werthamer previously served as Chief Operating Officer for Edge and Willis is a former Vice President of Strategic Accounts for Edge. (Dkt. #3 ¶ 4.01). In addition to being an employee, Werthamer was also a member of Edge, a Delaware limited liability company with its principal place of business in Collin County, Texas. *See* (Dkt. #1-2 at 7); (Dkt. #11-1 ¶ 2).

Werthamer and Willis both voluntarily resigned their employment at Edge in 2023. (Dkt. #3 ¶ 4.01). Edge asserts that Werthamer and Willis misappropriated Edge's confidential and proprietary information and improperly used the stolen

information to solicit Edge's employees and customers for their new employer. Edge also contends that Werthamer violated a non-competition agreement. Based on these assertions, Edge has brought various state law causes of action against Werthamer and Willis, including claims for tortious interference with contract, breach of fiduciary duty, fraud, and conspiracy.

In regard to diversity of citizenship, neither Edge nor Werthamer have provided a complete list of Edge's members. Werthamer asserts that Michael Ford, Richard A. Heise Jr., and Bill Hamel are members of Edge, but she does not allege that they are the only members of Edge. (Dkt. #1-1 ¶ 6). Edge asserts that Werthamer's membership was never terminated and that she is still a member of Edge. (Dkt. #9 at 2). Additionally, Edge and Heise assert that Old Willow Partners, LLC ("OWP"), a single-member Delaware LLC, and Edge Series C, LLC ("Edge Series C"), a Delaware LLC, are also members of Edge. (Dkt. #11 at 3–4); (Dkt. #12-1 ¶ 5). Heise claims that he is the sole member of OWP and that OWP is the sole member of Edge Series C. (Dkt. #12-1 ¶ 5).

Werthamer alleges that Ford is a resident and citizen of Texas, Heise is a resident and citizen of Illinois, and Hamel is a resident and citizen of Pennsylvania. (Dkt. #1-1 ¶ 6). To support her argument that Heise is a citizen of Illinois, Werthamer notes that Heise's Florida property tax bills were sent to his Illinois address, Heise executed an affidavit in Illinois, and Heise has not provided certain documents that would verify Florida as his domicile. (Dkt. #11 at 4–6); (Dkt. #14 at 5–6).

2

Heise contends that he is a resident and citizen of Florida. (Dkt. #12-1 ¶ 4). To support Florida citizenship, Heise has provided copies of property tax records for a residence in Palm Beach, Florida for the years 2021 to 2024, (Dkt. #9-2), utility bills for that property for the months of January 2025 and May 2023, (Dkt. #9-3), and a copy of his Florida driver's license, (Dkt. #9-4). Heise also asserts that he is registered to vote in Florida, (Dkt #9-1 ¶ 6), and that he and his wife have voted in statewide and national elections in Florida for many years, (Dkt. #12-1 ¶ 4). Heise acknowledges that he maintains residences in Illinois, Indiana, Texas, and Mexico, in addition to his Florida residence, and that he spends time at each residence throughout the year. (Dkt. #12-1 ¶ 8). In further support of his claim that he is not an Illinois citizen, Heise alleges that he has paid income tax to Illinois that only applies to non-Illinois residents. (Dkt. #12-1 ¶ 9).

The parties dispute whether Werthamer is currently a member of Edge. (Dkt. #11-1 ¶ 3); (Dkt. #12 at 5). Werthamer asserts that her membership in Edge terminated in 2023, when she ceased to be an employee at Edge, and that she has not otherwise consented to reinstate her membership in Edge. (Dkt. #11-1 ¶¶ 3, 5). Heise contends that Werthamer has provided no proof that her membership was terminated and asserts that Werthamer is still a member of Edge because she continues to own a 1.78% equity interest in Edge. (Dkt. #12-1 ¶¶ 12–13). In support of his assertion that Werthamer's membership is still active, Heise provided K-1 forms from 2020 to 2023, which evidence Werthamer's equity interest. (Dkt. #12-2, #12-3, #12-4, #12-5). In response, Werthamer states that because she has not received a K-1 form for 2024,

3

she cannot be a current member of Edge. (Dkt. #11 at 2–3). According to Edge, however, Werthamer should have received the form in September 2025, which is consistent with when she received the form for the prior four years. (Dkt. #12 at 5); *see* (Dkt. #12-2, #12-3, #12-4, #12-5) (The letters sent to Werthamer with the K-1s attached were all dated in September the year following the K-1's tax year.). Werthamer has not advised the Court whether she received the form in September 2025.

In sum, and relevant here, Edge maintains that diversity does not exist because Heise—an undisputed member of Edge—lives in Florida, as do Defendants Werthamer and Willis, and Werthamer remains a member of Edge, further negating any possibility of diversity jurisdiction. For her part, Werthamer maintains that diversity exists because Heise is a citizen of Illinois, not Florida, and Werthamer is no longer a member of Edge.

This case was originally filed in the 296th Judicial District Court of Collin County, Texas prior to being removed by Werthamer. (Dkt. #1 at 1). The Court now considers Edge's Motion to Remand to State Court, which asks the Court to remand the matter to the 296th Judicial District Court of Collin County, Texas on the basis that complete diversity does not exist under 28 U.S.C. § 1332. (Dkt. #9 at 1).

## II. LEGAL STANDARD

A party may remove an action from state court to federal court if the action is one over which the federal court possesses subject matter jurisdiction. *See* 28 U.S.C. § 1441(a). "The removing party bears the burden of showing that federal jurisdiction exists and that removal was proper." *Manguno v. Prudential Prop. & Cas. Ins. Co.,*

276 F.3d 720, 723 (5th Cir. 2002). Because federal courts have limited jurisdiction, the removing party must make "clear, distinct, and precise affirmative jurisdictional allegations" in her pleadings. *MidCap Media Fin., L.L.C. v. Pathway Data, Inc.*, 929 F.3d 310, 313 (5th Cir. 2019) (quoting *Getty Oil Corp. v. Ins. Co. of N. Am.*, 841 F.2d 1254, 1259 (5th Cir. 1988)).

To determine whether jurisdiction is present for removal, courts consider the claims in the state court petition as they existed at the time of removal. *Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 264 (5th Cir. 1995). Any ambiguities are construed against removal because the removal statute should be strictly construed in favor of remand. *Acuna v. Brown & Root, Inc.,* 200 F.3d 335, 339 (5th Cir. 2000).

### III. DISCUSSION

Remand is warranted because Werthamer has failed to identify each of Edge's members, has not made clear jurisdictional allegations of those members' citizenship, and has not rebutted the presumption against diversity jurisdiction. Under 28 U.S.C. § 1332, "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds . . . $75,000 . . . and is between . . . citizens of different States." To meet the burden of proof, the removing party must show that there is "complete diversity" between the parties. *MidCap*, 929 F.3d at 314 (citing *McLaughlin v. Miss. Power Co.*, 376 F.3d 344, 353 (5th Cir. 2004) (per curiam)). "Complete diversity" means that "all persons on one side of the controversy [must] be citizens of different states than all persons on the other side." *MidCap*, 929 F.3d at 314 (quoting *McLaughlin*, 376 F.3d at 353). The parties do not dispute that the

amount in controversy exceeds $75,000; only the citizenship of Edge is at issue. (Dkt. #1 ¶ 14).

**A. Edge's Citizenship**

The Court first addresses Werthamer's allegations regarding Edge's citizenship. Edge argues that Werthamer's list of Edge's members is incomplete. Werthamer has not clearly disputed that allegation. When one party to a suit is an LLC, its citizenship is "determined by the citizenship of all of its members." *Harvey v. Grey Wolf Drilling Co.*, 542 F.3d 1077, 1080 (5th Cir. 2008). Therefore, when trying to establish diversity jurisdiction in a suit against an LLC, the removing party "must specifically allege the citizenship of every member of every LLC." *SXSW, L.L.C. v. Fed. Ins. Co.*, 83 F.4th 405, 408 (5th Cir. 2023) (quoting *Settlement Funding, LLC v. Rapid Settlements, Ltd.*, 851 F.3d 530, 536 (5th Cir. 2017)). It is the removing party's duty to "trace entities' citizenships down the various organizational layers where necessary." *Alphonse v. Arch Bay Holdings, L.L.C.*, 618 F.App'x 765, 768 (5th Cir. 2015) (cleaned up).

The Fifth Circuit decision in *Settlement Funding* is instructive. Because the removing plaintiff in that case, an LLC, failed to adequately allege "the citizenship of each member of the many LLC- and partnership-litigants," the court held that the plaintiff did not meet its burden to establish complete diversity. 851 F.3d at 536–37. The plaintiff asked the court to take "judicial notice" of public records, court filings, and an affidavit from one of the LLC's officers to establish complete diversity jurisdiction. *Id*. But the plaintiff's filings were deemed insufficient to cure the jurisdictional defect, and the plaintiff even admitted that it did not know the

citizenship of all its members at the time of removal. *Id.* at 537. The *Settlement Funding* court emphasized that, as the party seeking federal jurisdiction, the plaintiff bore the burden of establishing such jurisdiction. *Id.* When the plaintiff failed to meet that burden, the court remanded the case to state court. *Id.* at 538.

Similarly here, Werthamer has failed to dispute or disprove Edge's allegation that the list of Edge's members she provided was incomplete; thus, Werthamer has not met the burden of proof required to establish diversity jurisdiction. Since Edge is an LLC and party to this suit, Werthamer, as the removing party, must precisely and affirmatively allege the citizenship of every member of Edge, including all the members of all LLCs that are members of Edge. *See MidCap*, 929 F.3d at 314 (explaining the removing party's burden of proof); *Harvey*, 542 F.3d at 1080 (explaining how to determine an LLC's citizenship); (Dkt. #1 ¶ 10) (Werthamer's incomplete list of Edge's members). In addition to any individual members of Edge, Werthamer must trace down OWP and Edge Series C's structure and affirmatively allege their citizenship or alternatively disprove that they are members of Edge. *See Alphonse*, 618 F.App'x at 768 (requiring the removing party to trace down the various organizational layers of an LLC in order to determine its citizenship); *MidCap*, 929 F.3d at 314 (requiring the removing party to make precise affirmative jurisdictional allegations); (Dkt. #12-1 ¶ 5) (Heise alleging the structure of OWP and Edge Series C). Werthamer disputes that OWP and Edge Series C's are members of Edge, but she has failed to seek jurisdictional discovery to supplement the record and support her allegations.

Like the removing party in *Settlement Funding*, Werthamer has failed to properly establish the citizenship of the LLC in this suit, Edge. *See* 851 F.3d at 537 (highlighting that the plaintiff did not know the citizenship of all the members at the time of removal); (Dkt. #1 ¶ 10) (Werthamer's incomplete list of Edge's members). And, as in *Settlement Funding*, Werthamer has not met her burden to establish that no member of Edge is a citizen of Florida—indeed Werthamer's filings indicate that she may not understand that it is her burden to allege and demonstrate complete diversity. *See* (Dkt. #11 at 3) (arguing that *Heise* failed to identify Edge's members or their citizenship). Without alleging the full list of Edge's members, and therefore alleging the citizenship of every Edge member, Edge's citizenship necessarily remains ambiguous. For this reason alone, Werthamer has failed to meet her burden to establish complete diversity.

## B. Heise's Citizenship

The Court next addresses the citizenship of Heise, who the parties agree is a member of Edge. Edge asserts that Heise is a citizen of Florida, while Werthamer contends that he is a citizen of Illinois. Considering the parties' allegations regarding Heise's citizenship, the evidence presented by Heise, the lack of evidence presented by Werthamer, and Werthamer's burden as the removing party to prove that complete diversity exists and to show a change in domicile, the Court finds that Heise

is likely a citizen of Florida.[1] At a minimum, there is sufficient ambiguity about Heise's citizenship to negate diversity jurisdiction.

For individuals, "citizenship has the same meaning as domicile," and "the place of residence is prima facie the domicile." *MidCap*, 929 F.3d at 313 (quoting *Stine v. Moore*, 213 F.2d 446, 448 (5th Cir. 1954)). Citizenship requires both "[r]esidence in fact" and "the purpose to make the place of residence one's home." *MidCap*, 929 F.3d at 313 (quoting *Texas v. Florida*, 306 U.S. 398, 424, 59 S.Ct. 563, 83 L.Ed. 817 (1939)). While an individual's statement of intent is relevant, to hold significant weight it must agree with the objective facts. *Coury v. Prot*, 85 F.3d 244, 251 (5th Cir. 1996).

Factors to consider when determining an individual's domicile include where the individual "exercises civil and political rights, pays taxes, owns real and personal property, has driver's and other licenses, maintains bank accounts, belongs to clubs and churches, has places of business or employment, and maintains a home for his family." *Id.* "There is a presumption in favor of the continuing domicile which requires the party seeking to show a change in domicile to come forward with enough evidence to that effect to withstand a directed verdict." *Id.* at 250. "[T]he party attempting to show a change assumes the burden of going forward on that issue." *Id.*

---

[1] Heise asserts that two entities, OWP and Edge Series C, are members of Edge. Heise further claims that he is the sole member of OWP and that OWP is the sole member of Edge Series C. Werthamer disputes the existence of these entities and their Florida citizenship. Because the Court finds that diversity jurisdiction is otherwise absent given Werthamer's failure to allege the citizenship of all Edge's members, the ambiguity in Heise's citizenship, and the ambiguity as to whether Werthamer herself is still a member of Edge, the Court need not further address the issue of the entities' existence or their citizenship.

In *Dubier*, our sister court held that the plaintiff was domiciled in California even though she maintained several properties and utilized mailing addresses outside of California. *Dubier ex rel. Dubier 2011 Revocable Tr. v. Triangle Cap. Props., LLC*, No. 1:21-CV-415, 2023 WL 3681503, at \*4 (E.D. Tex. Mar. 9, 2023). There, the defendant challenged the court's subject matter jurisdiction, alleging that the plaintiff was a U.S. citizen who resided and was domiciled in Greece. *Id.* at \*1. The plaintiff argued that she was a resident and citizen of California and diversity jurisdiction was proper. *Id.* at \*3. In support of her claim, she stated that she owned residential property in San Francisco, voted in San Francisco elections, had a current California real estate broker's license, was a member of the San Francisco Association of Realtors, and considered her domicile to be California. *Id.* at \*4. The court also noted that the record contained evidence that the plaintiff "pays property and income taxes in California, carries insurance on her San Francisco residential property, and maintains bank, retirement, and investment accounts in California." *Id.*

To counter the plaintiff's claim, the defendant pointed out that during litigation the plaintiff used mailing addresses in both Michigan and Louisiana. *Id.* The plaintiff explained that she used the Michigan address to avoid mail fraud, and the Louisiana address was a home that she co-owned with her brother and was where her mother resided. *Id.* Additionally, the plaintiff had a California driver's license, "albeit with a listed Louisiana address." *Id.* Considering all the evidence, the court found that the plaintiff established California as her domicile. *Id.*

Here, Werthamer has failed to meet her burden to prove that Heise is not a citizen of Florida. The parties do not dispute that Heise was a Florida citizen at some point in time. *See* (Dkt. #12-1 ¶ 8) ("In the past, we have also maintained our primary residence in Juno Beach, FL., and Wellington, FL."); (Dkt. #13-1 at 5) (emphasizing that Heise maintained Florida primary residences in the past). While Heise's continuing Florida citizenship is supported by the fact he maintains a current residence in Florida and his statement that he is a resident, citizen, and domiciliary of Florida, this statement must be viewed in light of the objective facts. *See MidCap*, 929 F.3d at 313 (stating requirements to establish citizenship); *Coury*, 85 F.3d at 251 (emphasizing importance of concurrence between statements and facts); (Dkt. #12-1 ¶ 4) ("I am a resident and citizen of Florida."). In support of his assertion, Heise attached copies of his Florida property taxes and driver's license. Heise also alleges that he and his wife "have voted in every statewide and national election in Florida for many years," own real property in Florida, and are part of a Florida HOA. (Dkt. #12-1 ¶ 4); (Dkt. #9-2, #9-4). Since Werthamer is not only the party seeking to show a change in domicile, but also the removing party, she must come forward with enough evidence to overcome the presumption in favor of Florida continuing to be Heise's domicile. *See Coury*, 85 F.3d at 250 (explaining who has the burden of proof); (Dkt. #14 at 4–6) (arguing Heise is not a Florida citizen).

The evidence relied upon to establish domicile in this case is similar to the evidence used in *Dubier*. Like the plaintiff in *Dubier*, while Heise owns property in multiple states and resides at those other properties from time to time, he asserts

11

that Florida is his domicile. *See Dubier*, 2023 WL 3681503, at *4 (listing properties the plaintiff owns); (Dkt. #12-1 ¶¶ 4, 8) (listing Heise's residences). The individuals in both cases pay property taxes in their alleged home state, are registered to vote in that state, and have driver's licenses issued by that state. *See Dubier*, 2023 WL 3681503, at *4 (listing evidence from the plaintiff); (Dkt. #9-2, #9-4) (Heise's property taxes, and driver's license, and statement that he votes in Florida). Unlike the plaintiff's driver's license in *Dubier*, Heise's license lists his Florida address. *See Dubier*, 2023 WL 3681503, at *4 (stating that plaintiff's California driver's license had a Louisiana address); (Dkt. #9-4) (Heise's driver's license).

Werthamer, like the defendant in *Dubier*, relies on speculative evidence such as Heise's mailing address and where he signed his affidavit to try and negate Heise's assertion that he is a citizen of Florida. *See Dubier*, 2023 WL 3681503, at *4 (pointing out that the plaintiff used a Michigan and Louisiana mailing address); (Dkt. #11 at 5) (citing to Heise's mailing address on his property tax documents and where he signed his affidavit). Werthamer also points out that Heise does not claim to belong to any clubs or churches in Florida, nor does he claim to maintain any bank accounts in Florida. *See* (Dkt. #11 at 6) (pointing out gaps in Heise's evidence).

An important distinction between Heise and the plaintiff in *Dubier* is that unlike Heise, the plaintiff in *Dubier* was the party asserting diversity jurisdiction and therefore bore the burden of proof. *See Dubier*, 2023 WL 3681503, at *3 (explaining the burden of proof); (Dkt. #11 at 4–6) (arguing Heise does not live in Florida). Accordingly, the Court finds that the current record does not satisfy the "clear,

12

distinct, and precise" standard Werthamer, as the removing party, must meet, nor does it overcome the presumption in favor of Heise's continuing domicile in Florida. *See MidCap*, 929 F.3d at 314 (explaining the removing party's burden of proof); *Coury*, 85 F.3d at 250 (explaining the burdens of proof for the party asserting a change in domicile). Werthamer could have sought jurisdictional discovery to further develop the record on Heise's citizenship. She did not. Because Heise is likely a citizen of Florida, or there is at last ambiguity on this issue, Werthamer has failed to meet her burden to establish diversity.

## C. Werthamer's Membership in Edge

Finally, the Court turns to Edge's assertion that Werthamer herself remains a member of Edge and thereby destroys complete diversity due to her Florida citizenship. Because Werthamer has removed the case to federal court, she bears the burden to show that she is no longer a member of Edge. The Court finds that she has failed to do so.

A member of a Delaware LLC may only resign "at the time or upon the happening of events specified in a limited liability company agreement and in accordance with the limited liability company agreement." 6 Del. C. § 18-603. "[U]nless a limited liability company agreement provides otherwise, a member may not resign from a limited liability company prior to the dissolution and winding up of the limited liability company." *Id*. Other than resignation, an individual can cease to be a member of an LLC upon assignment of all of the member's limited liability company interest. 6 Del. C. § 18-702(b)(3). A member of a Delaware LLC has the right to obtain the "current list of the name and last known business, residence or mailing

13

address of each member and manager" upon reasonable demand. 6 Del. C.
§ 18-305(a)(3).

While Werthamer's employment terminated with Edge in 2023, there is
nothing in the record other than her statements to support her argument that she is
no longer a member of Edge. *See* (Dkt. #1-1 ¶ 7) ("When I left my employment at Edge
in September 2023, I ceased being a member."). As a Delaware LLC, Edge is governed
by the Delaware Limited Liability Company Act, and therefore Werthamer could only
resign as a member upon the happening of certain events as outlined in Edge's
company agreement or if Edge was dissolved. *See* 6 Del. C. § 18-603 (explaining how
a member can resign from an LLC). The company agreement is missing from the
record, creating ambiguity about the process for a member to resign from Edge. *See
id.*

Additionally, Werthamer has provided no evidence that she assigned all of her
interest in Edge. *See* 6 Del. C. § 18-702(b)(3) (explaining the effect of assignment of a
member's interest). To the contrary, Heise alleges that Werthamer owns 1.78% of
Edge's Common Shares and provided tax documents from 2020 to 2023 in support of
this claim. *See* (Dkt. #12-1 ¶ 13) (asserting that Werthamer continues to hold an
interest in Edge); (Dkt. #12-2, #12-3, #12-4, #12-5) (Werthamer's past K-1 forms).
Werthamer does not refute this point but rather states that because she has not
received a tax document evidencing her membership from 2024, she can't be a
member of Edge. *See* (Dkt. #11 at 2–3) ("If Werthamer was indeed still a member of
Edge following the cessation of her employment in 2023, Edge would have been

14

required to issue a Schedule K-1 for tax year 2024 . . . Werthamer did not receive a Schedule K-1 from Edge in 2024."). Heise explains that Werthamer should have received the tax document in September, which appears to be consistent with the time the four prior tax documents were delivered to Werthamer. (Dkt. #12 at 5); *see* (Dkt. #12-2, #12-3, #12-4, #12-5) (showing that the letters sent to the Werthamer with the K-1s attached were all dated in September the year following the K-1's tax year).

Werthamer has the right to demand a list of the current members of Edge, which would clear up any confusion, but she has not provided any such evidence, has not attempted to amend her pleading, and has not asked the Court for jurisdictional discovery. *See* 6 Del. C. § 18-305 (explaining a Delaware LLC member's rights).

Since there is no way to tell if Werthamer's membership in Edge terminated according to the company agreement, the LLC appears to be active, and Werthamer has not provided any proof that she assigned her interest in Edge, Werthamer, as the removing party, has failed to meet her burden of proof. The Court finds that Werthamer is likely still a member of Edge. As a member of Edge, Werthamer's Florida citizenship destroys diversity jurisdiction. (Dkt. #1-1 ¶ 2); *see Harvey*, 542 F.3d at 1080 ("[T]he citizenship of a LLC is determined by the citizenship of all of its members.").

## D. Attorney's Fees

When a case is remanded, the court may order the removing party to pay "just costs and any actual expenses, including attorney's fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). The Supreme Court has clarified that, absent unusual circumstances, courts may award attorney's fees under Section 1447(c) "only where

the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Cap. Corp.*, 546 U.S. 132, 141, 126 S.Ct. 704, 163 L.Ed.2d 547 (2005). This inquiry should take into consideration "the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress's basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied." *Id.* at 140.

While unsuccessful, there is nothing to suggest that Werthamer did not have an objectively reasonable basis for seeking removal. Therefore, the Court will not award costs or expenses to Edge.

*    *    *

Werthamer has failed to demonstrate that no member of Edge is a citizen of Florida because she has not provided a complete list of Edge's members, has not overcome the presumption in favor of Heise's Florida citizenship, and has not provided any proof that her membership in Edge was terminated. As the removing party, Werthamer bears the burden to prove that complete diversity exists between the parties, and her pleadings must contain clear, distinct, and precise affirmative jurisdictional allegations. Werthamer has failed to meet that standard due to the lack of certain documents in the record, creating ambiguity as to the structure of Edge, Heise's citizenship, and the status of Werthamer's membership in Edge. Because federal courts have limited jurisdiction, any doubts regarding whether removal jurisdiction is proper should be resolved against federal jurisdiction. Thus, the Court concludes that Plaintiff's motion to remand should be granted.

16

### III. CONCLUSION

For these reasons, Plaintiff's Motion to Remand to State Court, (Dkt. #9), is

**GRANTED**.

It is therefore **ORDERED** that this case is **REMANDED** to the 296th Judicial

District Court of Collin County, Texas.

**So ORDERED and SIGNED this 26th day of November, 2025.**

_____
SEAN D. JORDAN
UNITED STATES DISTRICT JUDGE